UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTOLIN ANDREW MARKS,

    Plaintiff,

v.

COOK SINGH et al.,

    Defendants.

Case No. C07-5666RJB/JKA

REPORT AND RECOMMENDATION

**NOTED FOR:**

**OCTOBER 31, 2008**

This 73 page complaint was originally filed in Pierce County Superior Court and was removed to this court by the federal defendants.[1] Mr. Marks filed this action in state court seven months before filing a nearly identical action in this court (Dkt # 15 page 1). The federal defendants now move to dismiss this action as frivolous and malicious (Dkt. # 15). Mr. Marks has filed a response to the motion (Dkt. # 16). The response is in fact not a response, but instead an attack on the judiciary (Dkt. # 16).

After reviewing plaintiff's response, the court compared the complaint, (Dkt. # 1), to previous

---

[1] This is the third 73 page compliant filed by plaintiff. The complaints are nearly identical. See, Marks v United States, 07-CV-5395RBL; See Also, Marks v United States, 07-CV-5679FDB.

REPORT AND RECOMMENDATION
Page - 1

complaints and litigation filed by Mr. Marks. Review of the prior litigation including, <u>Marks v United States</u>, 07-CV-5395RBL/JKA, and <u>Marks v. United States</u>, 07-CV-5679FDB/JKA convinces the court this action is malicious.

The Reports and Recommendations in <u>Marks v United States</u>, 07-CV-5395RBL/JKA, and <u>Marks v. United States</u>, 07-CV-5679FDB/JKA list and summarize many of the plaintiff's other filings. The Reports and Recommendations outline case by case where Mr. Marks has filed and lost many of the same issues he is attempting to pursue in this case. <u>See</u>, <u>Marks v United States</u>, 07-CV-5395RBL (Dkt # 7). <u>See</u> Also, <u>Marks v United States</u>, 07-CV-5679FDB (Dkt # 6).

The Report and Recommendation to declare Mr. Marks a vexatious litigant, <u>Marks v United States</u>, 07-CV-5679FDB (Dkt # 6), is a 30 page document that carefully outlines Mr. Marks prior litigation in this district. See, <u>Marks v United States</u>, 07-CV-5679FDB (Dkt # 6, pages 2 to 28). That document sets forth the standard for defining frivolous and malicious litigation. That portion of the Report and Recommendation states:

> The standard for dismissal as "malicious" has not been well defined by case law but some guidance exists. In 1995 the District Court in Delaware considered the malicious standard and stated:
>
>> A separate standard for maliciousness is not as well established. *Deutsch* [67 F.3d 1085-87] merely states that a district court "must engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure, or harass the defendants." *Id*. Other Circuits, however, have offered more objective instances of malicious claims. For example, a district court may dismiss a complaint as malicious if it threatens violence or contains disrespectful references to the court. *Crisafi v. Holland*, 655 F.2d 1305 (D.C.Cir.1981); *see also Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir.1981) (stating that courts may dismiss pleadings with abusive or offensive language pursuant to the court's inherent powers under FRCP 12(f)). **In addition, a district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims.** *Id.; Van Meter v. Morgan*, **518 F.2d 366 (8th Cir.)**, *cert. denied*, **423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975);** *Duhart v. Carlson*, **469 F.2d 471 (10th Cir.1972)**, *cert. denied*, **410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973)**.
>
> <u>Abdul-Akbar v. Department of Corrections</u>, 910 F. Supp. 986, 999 (D. Del. 1995)(emphasis added). Other courts have found the term "malicious" means irresponsible or harassing litigation. <u>Daves v. Scranton</u>, 66 F.R.D.5 (E.D. Pa. 1975). The Pennsylvania District Court Stated:
>
>> The legal standard of 'frivolous or malicious' is not capable of precise definition for it is a standard intended for administration within the broad

> discretion of the court and to be applied with reasonable restraint but as a
> practical response to irresponsible litigation which would otherwise be
> subsidized and encouraged by the generosity of the *in forma pauperis*
> statute.
>
> Daves v. Scranton, 66 F.R.D. 5 (E.D. Pa. 1975). This court adopts the
> Pennsylvania Districts Courts' position. Mr. Marks has filed an action that is clearly
> frivolous and malicious.

(Marks v. United States, 07-CV-5679FDB Dkt. 6, pages 6 and 7).

After review of the prior Reports and Recommendations, and after comparing the issues in this case to prior litigation, the court concludes this action is maliciously repetitive of other filings. The action should be **DISMISSED WITH PREJUDICE.**

In this complaint plaintiff originally filed claims against a number of GEO employees as well as the remaining claims. The GEO employees settled all claims against them and are no longer part of this action.

The remaining defendants are three federal employees. Michael Melendez, Jack Bennett, and Gary Garman (Dkt # 1). Plaintiff's allegations against these defendants begin on page 3 of the complaint and continue through page 73. He complains of not being able to mail 285 letters to congress, at one time, free of cost. Plaintiff couches his claim as a denial of his right to petition government for redress (Dkt # 1, pages 3 to 18). The court has previously addressed this issue in Marks v Albin, 06-CV-5675RBL. This issue was also considered in Marks v United States, 07-CV-5395RBL.

Beginning on page 18 of the complaint plaintiff challenges the examination of his outgoing mail including mail to media. The issue of examination of outgoing mail was considered in Hopper v Wigens 05-CV-5662FDB[2]. It was also considered in Marks v USA 07-CV-5395RBL. Plaintiff also complains his legal materials are "read" by GEO employees acting under the direction of defendants, prior to his obtaining copying. This issue was raised in Hopper v Wigens 05-CV-5662FDB. It was also considered in Marks v USA 07-CV-5395RBL.

---

[2] Plaintiff has used several aliases including using the last names of Rudder and Hopper.

Beginning on page 23 plaintiff alleges he has a right under the Fifth Amendment to seek a passport where there is an immigration matter "at issue." While this specific issue, obtaining a passport, appears new, plaintiff is again collaterally challenging the ruling that he is Wayne Rudder. That ruling was made in his deportation action in 1991. He cannot collaterally challenge those proceedings in a federal civil rights action.

Beginning on page 26 of the complaint, plaintiff is again challenging the telephone system. His issues regarding the telephone system were addressed in Hopper v Meyers 05-5680RBL.

Beginning on page 30 plaintiff challenges an alleged denial of access to the files of Marva and Joanne rudder. He is again collaterally challenging findings made in deportation proceedings that he is Wayne Rudder. Plaintiff admitted to being deportable in 1991. (Marks v. Clark, 06-CV-0717RSL/MAT, Dkt. # 25 Report and Recommendation). In that case the court stated:

> On or about September 24, 1991, the former Immigration and Naturalization Service ("INS") issued an Order to Show Cause ("OSC"), placing petitioner in deportation proceedings and charging petitioner with being deportable from the United States for having been twice convicted of Possession of a Controlled Substance. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L555-69-Pt. 1; R301-302-Pt. 1). **Petitioner appeared for his deportation hearing before an Immigration Judge ("IJ") and admitted the allegations contained in the OSC and conceded deportability as charged**. Instead of deportation, petitioner filed an application for waiver of inadmissability under INA § 212(c) and an application for asylum and withholding of deportation. On July 26, 1993, the IJ denied petitioner's applications, and ordered petitioner deported from the United States to Trinidad on the charges contained in the OSC. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R999-1021-Pt. 1). Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which was denied on November 4, 1993. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R1022-31-Pt. 1). On November 18, 1993, petitioner filed a direct appeal of the BIA's decision in the Ninth Circuit Court of Appeals, which was dismissed for lack of jurisdiction. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. # 37 at R753-54-Pt. 1). Petitioner also filed a Petition for Emergency Stay of Deportation in the United States Court of Appeals for the District of Columbia Circuit, which was dismissed on December 6, 1993, for improper venue. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R755-57-Pt. 1). On December 8, 1993, petitioner filed a Motion for Emergency Stay of Deportation with the United States Supreme Court, which was denied the same day. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R842-872-Pt. 1; L278-Pt. 1). On December 9,1993, petitioner was removed from the

United States to Trinidad. (*Hopper v. Roach*, Case No. C05-1812-RSL Dkt. #37 at L269-70-Pt. 1; L274-Pt. 1).

On January 14, 1994, only one month after he had been removed, petitioner illegally reentered the United States without inspection. He remained in the United States illegally for more than eleven years before he was discovered at the California State Prison – Solano, where he was serving his sentence for a conviction for Grand Theft. On August 18, 2005, petitioner was released from the California State Prison and transferred to ICE custody. Petitioner claimed that he was Daniel Vincent Hopper, born in Los Angeles, California, and that he had been deported to Trinidad in 1993 illegally. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R996-98- Pt. 1). A fingerprint comparison performed by the Department of Homeland Security Forensic Laboratory showed that petitioner's fingerprints matched the fingerprints of an alien who went by the alias Ricky Elison Rudder who had been deported to Trinidad on December 9, 1993. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R1033-34-Pt. 1).

On August 18, 2005, petitioner was served with a Warrant for Arrest of Alien, a Notice of Custody Determination, and a Notice to Appear, placing him in removal proceedings and charging him with removability for entering the United States without being admitted or paroled, and for reentering the United States after being ordered deported without being admitted or paroled. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L530-35-Pt. 1). On September 26, 2005, petitioner appeared before an IJ, claiming that this was a case of mistaken identity and that he was wrongfully removed in 1993. On October 12, 2005, petitioner filed an application for asylum and withholding of removal. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L583-576-Pt. 1). His case was scheduled for trial on February 22, 2006, on the issues of removability and asylum from Trinidad. *(Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R1043-1045-Pt. 1; Dkt. #39 at 3 n.1).

On March 23, 2006, however, petitioner was transferred to the custody of the Tacoma Police Department for extradition to California pursuant to a September 1, 2005, warrant for petitioner's arrest for a parole violation. (*Hopper v. Clark*, Case No. C05-1812-RSL, Dkt. #59). On March 28, 2006, ICE filed a motion in the Immigration Court requesting that petitioner's pending removal proceedings be administratively closed because petitioner was no longer in ICE custody. On March 29, 2006, the IJ issued an Order administratively closing petitioner's removal proceedings. (*Hopper v. Clark*, Case No. C05-1812-RSL, Dkt. #58, Ex. B). On April 11, 2006, petitioner returned to the NWDC after California officials decided not to extradite him, and his removal proceedings were reopened.

After a removal hearing, the IJ denied petitioner's application for asylum, withholding of removal, and withholding of removal under Article III of the Convention Against Torture, and ordered him removed to Trinidad and Tobago on December 1, 2006. (Dkt. #22). On February 1, 2007, the IJ denied petitioner's request for a change in custody status. Id. Petitioner timely appealed the IJ's removal order and bond order to the BIA. On April 11, 2007, the BIA dismissed petitioner's appeal of the IJ's removal order. Accordingly, petitioner's order of removal became administratively final on April 11, 2007. On April 20, 2007, the BIA dismissed petitioner's appeal of the IJ's bond order and vacated the IJ's bond order as moot, noting that neither the IJ nor the BIA had authority to set bond

> conditions because a final order of removal had been entered. Id. On May 3, 2007, petitioner filed a Petition for Review and a motion for stay of removal in the Ninth Circuit Court of Appeals. Rudder v. Gonzales, No. 07-71756 (9th Cir. filed May 3, 2007). Under Ninth Circuit General Order 6.4(c)(1), this caused a temporary stay of removal to automatically issue. The Petition for Review remains pending before the Ninth Circuit.

(Marks v. Clark, 06-CV-0717RSL/MAT, Dkt. # 25 Report and Recommendation)(Emphasis added, foot notes omitted)(Report and Recommendation adopted by the court July 23, 2007, Dkt. # 30).

Thus, plaintiff has litigated the question of his being "Mr. Rudder" in other forums. In this complaint plaintiff specifically alleges he has been denied access to the files of Marva Rudder and Joanne Rudder. This issue was addressed in Marks v Garman 07-CV-5282FDB. The issue was again raised in Marks v USA 07-CV-5395RBL.

Beginning on page 24 Plaintiff again alleges he was denied access to a birth certificate he had obtained thus preventing him from obtaining a passport. Not only is this a collateral challenge to the propriety of prior deportation litigation, the issue has been before this court previously. Marks v USA 07-CV-5395RBL. The court will not discuss the remainder of the complaint in detail as the compliant is clearly duplicative of prior filings.

Plaintiff's motive in filing duplicative causes of action is disclosed in his response to a motion to dismiss filed in Marks v De Guia:

> The defendants hit the nail on the head when they state that the plaintiff is filing against **nearly identical defendants raising nearly identical causes of action and claims.** The key there is that **nearly identical** is not identical. (Marks v De Guia, 07-CV-5667BHS Dkt. # 12, page 4).

Mr. Marks refuses to abide by any adverse court rulings and his intent is to re litigate any issue lost. His actions are malicious. This action should be **DISMISSED WITH PREJUDICE**. The undersigned leaves to the court's discretion whether plaintiff should be further sanctioned for his response to the motion to dismiss.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **October 31, 2008**, as noted in the caption.

DATED this 26 day of September, 2008.

/S/ *J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge